UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NATHANIEL MARCUS GANN,

        Petitioner,

v.

RALPH DIAZ*, Acting Secretary, et al.

        Respondent.

Case No.:  12cv1418 -JAH (BLM)

**ORDER:**
**(1) VACATING ORDER DENYING MOTION FOR RECONSIDERATION [DOC. NO. 45] AND GRANTING RENEWED MOTION FOR RECONSIDERATION [DOC. NO. 47]**

**(2) OVERRULING PETITIONER'S OBJECTIONS TO REPORT AND RECOMMENDATIONS [DOC. NO. 31];**

**(3) MODIFYING and ADOPTING in part the REPORT AND RECOMMENDATIONS [DOC. NO. 28]**

**(4)DENYING PETITION FOR WRIT OF HABEAS CORPUS [DOC. NO. 1]**

**(5) DENYING MOTION FOR  CERTIFICATE OF APPEALABILITY AS MOOT**

* Ralph Diaz is named in place of Jeffery Beard as Acting Secretary of the California Department of Corrections and Rehabilitation, pursuant to Fed. R.Civ. P. 25(d).

This matter comes before the Court on remand from the United States Court of Appeals for the Ninth Circuit for the limited purpose of vacating this Court's prior order Denying Petitioner's Rule 60(b) Motion for Reconsideration (see Doc No. 45) and considering Petitioner's Objections ("Pet'r's Objs" or "Objections") to Magistrate Judge Barbra Lynn Major's Report and Recommendation ("R&R") on the merits. After careful consideration of the entire record, and for the reasons set forth below, the Court (1) **VACATES** its order denying Petitioner's Rule 60(b) Motion (Doc. No. 45), (2) **GRANTS** the renewed Motion For Reconsideration (Doc. No. 47), **OVERRULES** Petitioner's Objections (Doc. No 31), (3) **MODIFIES and ADOPTS in part** the Report and Recommendations (Doc. No. 28), (4) **DENIES** the petition for writ of Habeas Corpus, and (5) **DENIES** the Motion for Certificate of Appealability as **MOOT**.

## FACTUAL BACKGROUND

The underlying facts set forth in the California Court of Appeal's ("CCOA") opinion (*doc. no.* 18-71 at 48-55), affirming petitioner's conviction on appeal are referenced as set forth fully herein[1].

## PROCEDURAL BACKGROUND

On January 28, 2008, petitioner and co-defendant, Hansen, were charged in an information with one count of first degree murder. *Doc. No*. 18-4 at 17-19; *Lodg*. 1, vol. 1 at 1-2. The information further alleged personal use of a firearm within the meaning of California Penal Code Section 12022.53(d) and (e)(1) and the special circumstance of lying in wait pursuant California Penal Code section 190.2(a)(15). *Id.* Both defendants moved to have their cases severed for trial. *Doc. No 18-5* at 1; *Lodg*. 1, vol. 1 at 113-17. On October 7, 2008, defendant Hansen moved to continue her trial. *Id*. at 37. Petitioner did not join that motion. *Id.* On October 9, 2008 the trial court granted Hansen's motion to continue her

---

[1] Pursuant to section II of this Court's order, the Court references, without adopting in *toto*, the facts set forth by the opinion for purposes of reviewing petitioner's objections on the merits.

trial. *Id*. The government did not object, effectively severing the two trials. *Id*. On November 5, 2008, Gann's first trial began. *Doc. No*. 18-9 at 68; *Lodg* 1, vol. 3 at 706. It ended in a mistrial on November 20, 2008, when the jury could not reach a unanimous verdict. *Id*. at 105. On December 23, 2008, the trial court granted the district attorney's motion to rejoin petitioner's case with Hansen's case, which both defendants opposed. *Doc. No. 18-6* at 70 -81; *Lodg*. 1, vol. 2 at 311-22. Upon a joint trial, with separate juries, petitioner was found guilty of murder in the first degree. *Doc. No 18-7* at 60; *Lodg*.1, vol 2 at 438. The jury found the special circumstance and the personal use of a firearm allegation were not true. *Id*.

After being denied relief on direct appeal and having his petition for review denied by the California Supreme Court, Gann filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction. *Doc. No*. 1. On November 5, 2013, Respondent filed a response to the petition. *Doc. Nos*. 10, 12, 14, 16-17. On December 5, 2013, Petitioner filed a traverse, requesting, *inter alia*, an evidentiary hearing. *Doc. No*. 19. Pursuant to 28 U.S.C. § 636(b)(1) and CivLR 72.1, the Honorable Barbara L. Major, United States Magistrate Judge, submitted the Report & Recommendations to this Court on July 17, 2014, recommending that Petitioner's habeas petition and request for an evidentiary hearing be denied. *Doc. No*. 28.

On August 26, 2014, the Clerk of Court received objections to the R&R, postmarked August 22, 2014, and filed them *nunc pro tunc* to the postmarked date. This Court initially declined to consider Petitioner's objections as untimely and issued its order on November 3, 2015 adopting the R&R, denying the writ, and denying the request for an evidentiary hearing. *Doc. No*. 39.

On December 3, 2015, the Clerk of Court received a filing captioned "Petition for Rehearing," postmarked November 23, 2015, and filed it *nunc pro tunc* to the postmarked date. See *Doc. No*. 44. The Court construed Petitioner's filing as a motion under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 60(b) for reconsideration of the denial of his habeas petition based on his previously filed objections to the R&R.

On February 27, 2017, the Court denied Petitioner's Rule 60(b) Motion for Reconsideration. Doc. No. 45. On March 8, 2017 Petitioner filed an "Objection to Denial…" of his motion, a new Motion for Reconsideration based on the "prison mail box rule" and a "Motion for Certificate of Appeal" to the Ninth Circuit Court of Appeals. *Doc. No.* 47. The Ninth Circuit granted Petitioner's request for a certificate of appealability with respect to two issues: (1) whether admission of Brae Hansen's out-of-court statements violated appellant's Sixth Amendment right to confrontation, and (2) whether this Court abused its discretion in failing to consider appellant's objections to the magistrate judge's R&R.

On April 4, 2018, the Court requested a limited remand pursuant to Rule 62.1(c). *Fed. R. Civ. P.* 62.1(c). On May 15, 2018, the Ninth Circuit granted the request for a limited remand permitting this Court to vacate its prior ruling denying Petitioner's Rule 60(b) motion for reconsideration (doc. no. 45) and consider petitioner's previously filed objections on the merits. Petitioner's renewed motion for reconsideration (doc. no. 47) and objections to the R&R (doc. no. 31) are now before the Court.

## LEGAL STANDARD OF REVIEW

### I. OBJECTIONS TO REPORT & RECOMMENDATIONS

The district court's role in reviewing a magistrate judge's report and recommendation is set forth in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). When a party objects to the magistrate judge's report and recommendation, the district court "shall make a *de novo* determination of those portions of the report . . . to which objection is made," and may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*.; *see also Fed. R. Civ. P.* 72(b)(3). The party objecting to the magistrate judge's findings and recommendation bears the responsibility of specifically setting forth which of the magistrate's judge's findings the party contests. *See Fed. R. Civ. P.* 72(b). It is well-settled that a district court may adopt those portions of a magistrate judge's report to which no

specific objection is made, provided they are not clearly erroneous. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## II. AEDPA CONSIDERATIONS

Habeas relief may be granted "when a state court determination was either: "(1) …contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *See Day v. Duncan*, 121 F. App'x 211, 212 (9th Cir. 2005). A state court's factual findings are "presumed to be correct," although a habeas petitioner may rebut this presumption by "clear and convincing evidence." *Id*. § 2254(e)(1). The reviewing Court must be "'convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record' before the state court". *Rodriguez*, 872 F.3d at 919 (9th Cir. 2017) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004).

## DISCUSSION

Petitioner filed a sixty-four-page objection to multiple sections of the R&R in narrative form "arguing that his trial as a whole was incredibly unfair," in violation of the Confrontation and Due Process Clauses of the United States' Constitution. The Court consolidates Petitioner's various multi-part discussions into two legal objections. First, Petitioner objects to the R&R's reliance on particular statements of fact set forth by the California Court of Appeal ("CCOA") and adopted by the R&R. (*Pet'r's Objs* at 7-24). He objects on the basis that such statements were derived from evidence that was either not admitted before his separate jury or improperly admitted into evidence against him in violation of his constitutional rights[2]. Second, Petitioner challenges the determination that

---

[2] Petitioner also objects to statements of fact that conflict with the defense theory of the case, but he does not pose a constitutional challenge to the admissibility of the evidence supporting those facts. "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any

the state court's legal conclusions were neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court. (*Pet'r's Objs* at 25-64).

In addressing petitioner's objections, the Court reviews the state court's last reasoned decision by the California Court of Appeal ("COOA"). See *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir.2000).

## I. FEDERAL CONSTITUTIONAL ERROR

### A. Co-conspirator Statements

As a preliminary matter, petitioner argues that "the trial court used extra judicial information that was not admitted against petitioner (Hansen's confession) to determine [the existence of a conspiracy] and allow testimonial hearsay to be admitted…." (*Pet'r's Objs* at 33). He further contends that the state appellate court continued to rely on Hansen's confession to find that there was sufficient evidence to support the trial court's conclusion that Hansen's 911 call and her prearrest statements to law enforcement were made during and in furtherance of the conspiracy. *Id*.

#### 1. Preliminary Factual Determination

Whether the court must look only to independent evidence - that is evidence other than statements sought to be admitted - when determining whether a conspiracy exists between the declarant and the objecting party differs between California state law and federal law. *See   People v. Thompson,* 1 Cal. 5th 1043, 1108 (2016), reh'g denied (Feb. 1, 2017), cert. denied sub nom. *Thompson v. California,* 138 S. Ct. 201 (2017) (the offering party must present independent evidence to establish prima facie the existence of a conspiracy); *Cf. Bourjaily v. United States*, 483 U.S. 171 (1987) (a trial court, in making a preliminary factual determination under the co-conspirator exclusion to the hearsay rule, may examine the hearsay statements sought to be admitted).

_____

such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson v. Virginia*, 443 U.S. 307, 326 (1979).

6

In general, state court evidentiary decisions are reviewed only to ensure consistency with due process. *Patterson v. New York*, 432 U.S. 197, 202 (1977). A state court's "decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Id.* (quoting *Speiser v. Randall*, 357 U.S. 513, 523, (1958).

In *Bourjaily,* the Court reasoned,

> [A] piece of evidence, unreliable in isolation, may become quite probative when corroborated by other evidence. A *per se* rule barring consideration of these hearsay statements during preliminary factfinding is not therefore required. Even if out-of-court declarations by co-conspirators are presumptively unreliable, trial courts must be permitted to evaluate these statements for their evidentiary worth as revealed by the particular circumstances of the case.

*Bourjaily*, 483 U.S. at 180.

The state court relied heavily on Hansen's out of court statements, including portions of her confession, to determine that sufficient evidence had been presented to admit the 911 call and Hansen's prearrest statements to law enforcement as statements made during and in furtherance of the conspiracy. *See Doc No*. 28 at 27; *Lodgment No*. 13 at 16. In light of *Bourjaily*, the state court's consideration of Hansen's out-of-court statements does not rise to the level of a due process violation nor was it contrary to clearly established *Federal* law as determined by the Supreme Court. *Id.* Petitioner's objection is **OVERRULED**.

### 2. Admission of Co-Conspirator Statements as Testimonial Hearsay

Gann contends that the state court violated his Sixth Amendment right to confront witnesses testifying against him by admitting testimonial hearsay. Petitioner maintains that admission of Hansen's testimonial statements was prejudicial error, characterizing the remaining evidence against him (Goodman's testimony, bank records and store receipts, DNA evidence, and eyewitness testimony) as insufficient to support a conviction considering the hung jury in his first trial.

7

The R&R considered *Crawford v. Washington*, 541 U.S. 36 (2004) and *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and concluded that even if statements made by Hansen (to Officer Forsey and Detective Rivera) were testimonial in nature, the state court's decision to admit such evidence was not unreasonable in light of clearly established federal law. *Doc. No.* 28 at 22, 33. The R&R further characterized the scenario presented here, where a co-conspirator's testimonial statements to law enforcement are peppered with fragments of the truth, arguably to make the false portions believable, as "a set of circumstances never before squarely addressed by the Supreme Court," concluding that it was not unreasonable for the state court to apply the same rationale as the court in *United States v. Stewart*, 433 F. 3rd 273, 293(2d. Cir. 2006). Even assuming error, the magistrate judge found that it was harmless in light of the testimony of prosecution witness Charles Goodman and other corroborating evidence. *Doc. No.* 28 at 24, 34.

The "tension" between testimony admitted under the co-conspirator exception to the hearsay rule and uncross-examined testimonial statements prohibited under the Confrontation Clause was addressed by the Supreme Court in *Bourjaily*. Relying on *Ohio v. Roberts*, 448 U.S. 56, 63 (1980) and *Delaney v. United States*, 263 U.S. 586, 590 (1924), the Court held that there can be no separate Confrontation Clause challenge to the admission of a co-conspirator's out-of-court statement since "no independent inquiry into reliability is required when the evidence 'falls within a firmly rooted hearsay exception.'" *Bourjaily*, 483 U.S. at 183 (quoting *Roberts*, 448 U.S. at 66). In *Crawford*, the Court abandoned this rationale, finding that the "reliability" test departed from the Confrontation Clauses' historical principles and original meaning. The Court explained,

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of "reliability." Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination….

8

Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination….Whatever else the term covers, it applies at a minimum to…to police interrogations.

*Crawford*, 541 U.S. at 61, 68. Under *Crawford*, the Sixth Amendment is triggered when statements are offered into evidence that are (1) testimonial *and* (2) hearsay. Testimonial, out-of-court statements, offered for their truth are barred under the Confrontation Clause unless the witness is unavailable and defendant had prior opportunity to cross-examine. *Id*.

a. <u>Hansen's Statements to Detective Rivera</u>

The trial court admitted Hansen's statement to Detective Rivera as evidence against Petitioner. There is no dispute that the questioning conducted by Detective Rivera during the two hour interview at the police station constituted "police interrogation[3]" under *Crawford* and therefore Hansen's responses fit comfortably under the testimonial umbrella. However, the court wrestled with whether Hansen's statements were offered for the truth of the matter asserted.

The Confrontation Clause is not implicated when statements are offered "for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S., at 60, n. 9. At trial, defense counsel requested a limiting instruction directing the jury *not* to consider Hansen's statements for the truth of the matter asserted.

**Mr. Ricardo Garcia**: Because they are…hearsay statements as to Mr. Gann's case without any exception, except I believe Mr. Bennett's argument in the -- indicates that he wasn't offering them for the truth of the matter asserted, therefore they wouldn't be hearsay. And if that is the case, if they are not being offered in my client's case as to the truth of the matter asserted, I would ask for a limiting

---

[3] The Court loosely used the term "interrogation" in its "colloquial, rather than any technical legal, sense. Recorded statement[s], knowingly given in response to structured police questioning, qualifies under any conceivable definition." *See Crawford*, 541 U.S. at 53, fn 4.

9

instruction to the jury to indicate that they are not to consider Miss Hansen's statements at this point in time for the truth of the matter asserted, and that is why they are not hearsay.

**The Court**: Why Can't -- Well, I may have to. Why can't it be introduced for the truth of the matter stated?

**Mr. Ricardo Garcia**: It's hearsay.

**The Court**: Is it?

**Mr. Ricardo Garcia**: It is hearsay. It's her statement.

**The Court**: Has the conspiracy ended yet? When does the conspiracy end?

**Mr. George Bennett**: The conspiracy ends when they are arrested.

**The Court**: That's right.

**Mr. George Bennett**: One of the elements of the conspiracy is the carrying out of the objective of the conspiracy….

**Mr. Ricardo Garcia**: The statements of Miss Hansen gave to the police officers are, in fact, hearsay, therefore truthful statements, that is fine, as well. But my understanding is his argument is that Miss Hansen is lying to the officers, and that he -- that she then confesses her truth later on …partially to Rivera, then ultimately to…Burkett and to Smith.

**The Court**: These statements are admissible. The conspiracy is going…

**Mr. Ricardo Garcia**: My question is, a limiting instruction to let them know that they are not for the truth of the matter asserted.

**The Court**: No, No, No.

Turning to the reasoning laid out by the Second Circuit in *Stewart*, the CCOA concluded that the truthful statements were not rendered inadmissible by the Confrontation Clause because they were "designed to lend credence to the false statements and hence advance the conspiracy." 433 F. 3rd at 293. However, in light of *Crawford*, it is irrelevant whether the statement being offered falls within a hearsay exception for the purpose of a Confrontation Clause analysis. The Court considered this contention along with multiple hearsay exceptions discussed by the dissent. Ultimately the Court disagreed with Chief Justice Rehnquist that "some out-of-court statements are just as reliable as cross-examined in-court testimony due to the circumstances under which they were made," concluding that:

Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout a history with which the Framers were keenly familiar. This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances.

*Crawford*, 541 U.S. at 56.

Specific portions of Hansen's statements, offered through the testimony of Detective Rivera, including incriminating statements regarding the intruder's clothes, the type of gun used, and the direction in which he fled were arguably the "truthful" statements to which the CCOA referred and which the prosecution sought to prove – making those statements testimonial hearsay. As a co-defendant, Hansen invoked her Fifth Amendment right against self-incrimination and therefore was unavailable as a witness. *See California v. Green*, 399 U.S. 149, 168 n.17 (1970) (defendant who invokes the Fifth Amendment right against compelled self-incrimination is unavailable); *Padilla v. Terhune*, 309 F.3d 614, 618 (9th Cir. 2002) (same).

However, Gann had no prior opportunity to test the veracity of her statements through cross-examination – an indispensable prerequisite for admission of testimonial evidence under the Confrontation Clause. *Crawford*, 541 U.S. at 59. The admission of testimonial hearsay, i.e. Hansen's out-of-court statements to Detective Rivera offered into evidence for the truth of the matter asserted, violated Gann's Sixth Amendment right. To find otherwise was contrary to and an unreasonable application of the holding in *Crawford*.

b. Hansen's Statements to Forsey

Upon arrival to the scene, officer Forsey was assigned with the responsibility of "taking care of Hansen and getting a statement." *Doc. No.* 18-23 at 120; Lodgement 3, vol. 6 at 326. He testified that the purpose of getting her statement was to "acquire more information on the circumstances…regarding the death, and …obtain suspect information…start the apprehension process of finding the suspect or any witnesses or any additional information related to the crime." *Id.* at 111-12. While law enforcement was securing the ground floor, officer Forsey escorted Hansen up the stairs and out the front

11

door, away from where the suspect was last seen fleeing. *Id*. at 142. He testified that his primary concern was safety, to insure there was no immediate threat, and to make sure Hansen was not in need of medical assistance. *Id.* at 123

Foresey interviewed Hansen inside an ambulance in front of the residence. *Id*. at 110, 119. It began shortly after 12:40 p.m., when officer Forsey arrived on the scene, and continued until Detective Rivera and Sargent Morales arrived a little after 2:17 p.m. *See Id*. at 132; *Doc. No.* 18-24 at 131-132. He began the interview by asking Hansen some basic information, including her name, address, home phone and cell phone number. *Doc. No* 18-23 at 112-13.He then asked Hansen to recount what happened in narrative form and took notes from her statement. *Id*. at 113. Officer Forsey reassured Hansen that she was safe and called a crisis counselor to the scene. *Id*. at 104-105.

The CCOA concluded that officer Forsey was primarily concerned with determining what happened and whether Hansen had any information that could help police find the suspect, but that his conversation with Hansen was not structured or formal and therefore nontestimonial. However, in *Michigan v. Bryant*, 562 U.S. 344, 365–66 (2011), the Supreme Court clarified,

> Whether formal or informal, out-of-court statements can evade the basic objective of the Confrontation Clause, which is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial. When, as in *Davis,* the primary purpose of an interrogation is to respond to an "ongoing emergency," its purpose is not to create a record for trial and thus is not within the scope of the Clause. But there may be other circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony.
>
> *Davis* made clear, whether an ongoing emergency exists is simply one factor—albeit an important factor—that informs the ultimate inquiry regarding the "primary purpose" of an interrogation…. Formality is not the sole touchstone of our primary purpose inquiry because, although formality suggests the absence of an emergency and therefore an increased likelihood that the purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution, informality does not necessarily indicate the presence of an emergency or the lack of testimonial intent. (quotations omitted).

12

*Id.* at 366. In *Davis*, the Supreme Court recognized that "a conversation which begins as an interrogation to determine the need for emergency assistance" can "evolve into testimonial statements." 547 U.S., at 828. The Court explained further in *Bryant*:

> This evolution may occur if, for example, a declarant provides police with information that makes clear that what appeared to be an emergency is not or is no longer an emergency or that what appeared to be a public threat is actually a private dispute. It could also occur if a perpetrator is disarmed, surrenders, is apprehended, or, as in *Davis*, *flees with little prospect of posing a threat to the public*. Trial courts can determine in the first instance when any transition from nontestimonial to testimonial occurs, and exclude "the portions of any statement that have become testimonial, as they do, for example, with unduly prejudicial portions of otherwise admissible evidence". *Davis*, 547 U.S. at 829. (emphasis added)

562 U.S. at 365-66

"To determine whether the 'primary purpose' of an interrogation is 'to enable police assistance to meet an ongoing emergency,' *Davis*, 547 U.S., at 822, which would render the resulting statements nontestimonial, we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Id.* at *366.* The circumstances, statements, and actions of both the declarant and the interrogator are to be considered. *Id.* at 367

In the instant case, law enforcement became aware that the suspect had fled, the weapon had been left at the scene, McNeil was dead, and Hansen had refused medical treatment, providing some "context for first responders to judge the existence and magnitude of a continuing threat to the victim(s), themselves, and the public." *See Id.* at 365. While Forsey's initial concern was safety, his belief that any threat posed by the suspect was minimal is evidenced by Foresy's willingness to call a third-party (crisis counselor) to the scene. Additionally, Forsey allowed Hansen to provide her statement in narrative form – a form of interrogation not typically used to elicit responses necessary to resolve an emergency. The interview lasted over an hour, with no sense of urgency. Forsey testified that Hansen was weeping and upset, but not hysterical. The circumstances, statements and actions of both Forsey and Hansen indicate that the crisis had subsided.

13

Forsey's questioning, though not as formal and structured as Detective Riveria's, cannot be characterized as informal. The location of the interview is just one factor of the formality inquiry. Forsey asked Hansen standardized introductory questions, including her name, address and phone number. He testified that he didn't have that information memorized and took notes from the statement she provided. *Doc. No.* 18-23 at 113. Any indication that a declarant's responses are being documented would alert the declarant that the information provided may be used in future prosecution. *See United States v. Larson,* 460 F.3d 1200, 1213 (9th Cir. 2006), *aff'd on reh'g en banc,* 495 F.3d 1094 (9th Cir. 2007) (recognizing that *Crawford* at least suggests that the declarant's awareness or expectation that his or her statements may later be used at a trial is a determining factor).

As Forsey testified, the primary purpose of the interrogation was to determine what happened and begin a criminal investigation. To do so, it was necessary for Forsey to "establish …past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. Under a comprehensive and objective evaluation of the circumstances, Hansen's statements to detective Forsey were testimonial. To the extent the CCOA based its determination regarding the testimonial nature of Hansen's statements only on the touchstone of formality, the Court finds that the CCOA's determination was an unreasonable application of Federal law under *Bryant*.

c. Hanesn's 911 Call

The audio dispatch tape of Hansen's conversation with the 911 operator was played for the jurors on the second day of Gann's trial. *Doc. No.* 18-10 at 6; Lodgment No.1, vol. 2 at 784-85. A copy of the transcript was also provided to jurors. *Id.* Hansen told the 911 operator that a thin man, about 5'6 or 5'7, dressed in dark clothing "popped out" and shot her dad after her dad refused to provide the combination to the safe. *Id.* at 11-21. The 911 operator asked specific questions about the suspect's race, height, build, facial hair, clothing, tattoos, voice, mode of transportation and direction of flight. Hansen responded that she could not determine his race nor whether he had tattoos or facial hair because he was covered "head to toe," in black jeans, a long sleeve black shirt, a black ski mask, black

shoes, gloves and sunglasses. *Id.* at 12-13, 18, 20. The 911 operator made further inquiries: whether anyone else was in the home, the layout of the residence, Hansen's specific location and whether first responders would be able to gain access to the house. Hansen's responses indicted that she was alone with her hands zip-tied, and her father laying on the floor with "blood flowing out of his head." *Id.* at 15,19, 20. The operator assured Hansen, "…we're getting you help…. We're gonna get some help for your dad too. We're gonna get paramedics to help him." *Id.* at 21.

The Supreme Court has emphasized, "the basic objective of the Confrontation Clause…is to prevent the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial." *Bryant*, 562 U.S. at 366. The primary purpose of the questioning is the ultimate inquiry. *Id.* "A 911 call…and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Davis*, 547 U.S. at 827 (quoting *Crawford,* 541 U.S. at 51).

Although Hansen may have had an ulterior motive in crafting her responses, Hansen's call to 911 was primarily a call for help. As in *Davis,* when viewed objectively, the questions asked and answered were the type to elicit information helpful in resolving an ongoing emergency. While establishing the identity of the suspect is valuable information for trial, the *Davis* Court recognized that the 911 operator's ability to provide a description of the suspect to dispatched officers responding to the scene helps ensure their safety. *Id.* The suspect's whereabouts were unknown, and at the time it was unclear whether he was armed. These factors indicate an ongoing emergency.

Lastly, the Court turns to the question of formality. The 911 operator's questions were unstructured and informal, asked rapidly and answered abruptly, all while Hansen remained bound in a room with the bloody, lifeless body of her dad. Under such circumstances, it cannot be said that Hansen was acting as a witness. Her responses to the 911 operator were nontestimonial and not subject to the Confrontation Clause. The CCOA

opinion reaching the same conclusion was neither contrary to, nor an unreasonable application of Federal law. Petitioner's objection is **OVERRULED**.

### B. Goodman's Psychiatric Records

#### 1. Effective Cross-Examination

The prosecution called witness Charles Goodman to testify regarding incriminating statements Gann allegedly made to him when they were both detained in the psychiatric unit at Maricopa County Jail. Gann's request for release of Goodman's psychiatric records for impeachment purposes prior to trial was denied. Relying on *People v. Hammon*, Cal. 4th 1117, 1119 (1997), the CCOA held that because defense counsel did not renew the motion for disclosure of the records during Gann's first trial or during the joint trial, there was no error.

On Federal habeas review, petitioner claims he was denied an opportunity to effectively cross-examine Goodman at trial in violation of his Sixth Amendment rights[4]. Gann claims that the denial impacted defense counsel's ability to impeach Goodman's testimony. Petitioner reasserts the same arguments in his objections to the R&R. See *Doc. No.* 31 at 46, 49-51.

A defendant meets his burden of establishing a Confrontation Clause violation by showing that "[a] reasonable jury might have received a significantly different impression of [a witness's] credibility had ...counsel been permitted to pursue his proposed line of cross-examination." *Delaware* v. *Van Arsdall*, 475 U.S. 673, 680 (1986); *Slovik v. Yates*, 556 F.3d 747, 753 (9th Cir.2009). Petitioner argues that not having the records prior to trial

---

[4] Gann also challenges the admission of Goodman's testimony as unreliable. "A habeas petitioner's contention that a witness' testimony was unworthy of belief is not reviewable in habeas proceedings since credibility determinations are the province of the jury. *Mobley v. Kirkpatrick*, 778 F. Supp. 2d 291, 312 (W.D.N.Y. 2011); *United States v. Scheffer*, 523 U.S. 303, 313 (1998) (A fundamental premise of our criminal trial system is that the jury is the lie detector.) Under California law, "the credibility of a witness and the weight to be accorded his testimony are questions directed to the trier of fact who may accept all *or part* of the testimony of any witness it believes to be true or may reject all or *any part* of which it believes to be untrue. *Union Pac. R. Co. v. Munoz*, 326 F.2d 248, 254 (9th Cir. 1964).

impeded defense counsel's ability to employ or prepare an expert witness to presumably explain to the jury the mental defects Goodman suffered from and the effect any medication may have had. However, employing an expert would not have given the jury a "significantly different impression" of Goodman's credibility. Defense counsel cross-examined Goodman at length about his mental health, diagnosis, prescribed medications, drug use, prior convictions, fanciful ideas, and misconduct. *Doc. No.* 18-29 at 63-93 This line of questioning directly implicated "Goodman's ability [or lack thereof] to perceive, recollect or communicate," and his overall state of mind. The defense also presented officer Christopher Beckius to impeach Goodman's testimony regarding the circumstances of a prior arrest and describe his abnormal behavior. See *Doc. No.* 18-36 at 12-17. Based on the Court's review of Goodman's medical records, it is highly unlikely that an expert would have impeached Goodman's credibility any more than defense counsel did during cross examination. Petitioner was allowed to pursue his proposed line of cross-examination despite denial of Goodman's medical records, and therefore has failed to meet his burden in establishing a constitutional violation. Denying defense counsel's request for the release of Goodman's medical records was neither contrary to nor an unreasonable application of federal law. Petitioner's objection is **OVERRULED**.

### 2. *Non-Disclosure of Favorable Evidence*

Petitioner also asserts that the denial of Goodman's medical records amounted to a *Brady* violation. *See Brady v. Maryland,* 373 U.S. 83, (1963). The Government has a duty to disclose favorable evidence "only when suppression of the evidence would be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976)). Petitioner must show release of the records would have "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. Defense counsel thoroughly cross-examined Goodman and presented rebuttal witness Beckius. In addition, the R&R describes sufficient corroborating evidence contained in the record, supporting material aspects of Goodman's testimony. Petitioner failed to

demonstrate how the release of Goodman's medical records would have undermined the outcome of the case. To Court adopts the R&R's reasoning to the extent consistent with this order. Petitioner's objection is **OVERRULED**.

### C. Aggravating Evidence on Rebuttal : K.U.'s Rape Allegation

The prosecution called Gann's former high school girlfriend, K. U., to rebut testimonial evidence of Gann's peaceful and non-violent character. *Doc. No.* 18-71 at 70. In response to a follow-up question about Gann's sexually abusive conduct, K.U. blurted out that Gann raped her. *Id.* Defense counsel's motion for a mistrial was denied. *Id.* The trial court directed the prosecutor not to "overreach" on further direct examination, but allowed additional questioning as to whether Mr. Gann "ma[d]e [K.U.] have sexual intercourse with him" against her will. *Doc. No.* 18-38 at 24- 25. The prosecutor asked K.U. if she had an "opinion about Mr. Gann being non-violent," to which she responded, "I do find him violent." *Id.* at 26. He later asked whether she obtained a restraining order against him and she answered in the affirmative. *Id.* at 29. The court granted a continuance to allow defense counsel to locate surrebuttal witnesses to impeach K.U., but did not strike K.U.'s rape allegation.

California rules of evidence permit the prosecution to offer rebuttal evidence of defendant's character, through otherwise impermissible testimony, when the defendant "opens the door" by introducing potentially misleading character evidence. California Evidence Code ("Cal. Evid. Code") section 1102; *People v. Gutierrez*, 28 Cal. 4th 1083, 1139 (2002). Lawmakers have broad latitude to establish evidentiary rules for criminal trials, so long as they do not infringe upon Constitutional guarantees. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). Constitutional rights are "abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve. (internal quotations omitted) ". *Holmes*, 547 U.S. at 324 (2006). The Court in *Payne v. Tennessee* noted that "if, in a particular case, a witness' testimony … so infects the…. proceeding as to render it fundamentally unfair, the

defendant may seek appropriate relief under the Due Process Clause of the Fourteenth Amendment." 501 U.S. 808, 831 (1991).

Gann called seven witnesses to attest to his peaceful character, which opened the door under state law to evidence of petitioner's character for violence and conflict. *Cal. Evid. Code* § 1102 (b). The well-established evidentiary rule allowing for the admission of such testimony is not arbitrary; it provides a method for the prosecution to ensure evidence presented by the defendant is not misleading.

In deciding whether to put forth evidence, defense counsel must make a strategic decision. *See Campbell v. Kincheloe*, 829 F.2d 1453, 1462 (9th Cir. 1987) (noting that one reason the defense decided not to present evidence was to avoid "opening the door" to a vast array of aggravating evidence in rebuttal, including the forcible rape of defendant's ex-wife, repeated rape and intimidation of fellow inmates, drug and alcohol induced violence). At side bar, defense counsel claimed that had he known the witness would allege rape, he would not have placed character evidence in front of the jury. *Doc. No*. 18-38 at 23. Defense counsel's misguided calculation as to the potential scope of aggravating evidence is of little consequence in light of the continuance granted to allow for additional preparation to rebut it. The R&R adequately considers the impact of other testimony and evidence; including surrebuttal witness, Joshua Wood, who testified "that K.U. tended to blow things out of proportion and "victimize" herself, had difficulty taking responsibility for her own actions, and tended to overdramatize things." It cannot be said that the unanticipated rape allegation rendered the trial fundamentally unfair when Gann was afforded "a meaningful opportunity to present a complete defense" as guaranteed under the Due Process Clause. In light of the record, the CCOA's determination that the trial court did not error by failing to strike K.U.'s testimony or declare a mistrial was neither contrary to nor an unreasonable application of federal law. Petitioner's objection is **OVERRULED**.

### D. Re-Joinder of Gann and Hansen's trials

Petitioner argues that the re-joinder of his trial with that of his co-defendant was fundamentally unfair in violation of his due process rights. The magistrate judge discussed exhaustion, but declined to address procedural defect before turning to the merits of Petitioner's claim. In Petitioner's objection to the R&R, he argues that his defense of third party culpability is irreconcilable with Hansen's defense that she withdrew from the conspiracy. Gann argues that Hansen's counsel had to undermine Petitioner's defense in order to acquit Hansen - essentially requiring co-defendant's counsel to act as a second prosecutor, violating Gann's right to a fair trial. Petitioner, however, does not address in great detail the issues of exhaustion and procedural defect.

#### 1. Exhaustion and Procedural Defect

Exhaustion and procedural defect are two separate legal theories that require a habeas petitioner to submit his claims for relief to the highest state court before a federal court will consider the claim. 28 U.S.C §2254; *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) (section 2254 requires that state prisoners give state courts a fair opportunity to act on their claims). Gann admittedly did not raise the issue of re-joinder on direct appeal before the CCOA, but upon notice of the failure to exhaust his claim, he filed a petition for writ of habeas corpus with the California Supreme Court. *Doc. No*. 18-78 at 1-9. In his writ, he explains that despite his request, his appellate attorney "did not raise all issues," and "instead focused on only the strongest issues." The California Supreme Court denied the petition on two grounds: (1) for failure to "state fully and with particularity the facts on which relief is sought" citing *People v. Duvall*, 9 Cal. 4th 464, 474 (1995) and *In re Swain*, 34 Cal. 2d 300, 304 (1949); and (2) for failure to state special circumstances constituting an excuse for not raising the claimed errors on timely appeal, citing *In re Dixon*, 41 Cal. 2d 756, 759-760 (1953) ("Petitioner has the burden in [a state habeas proceeding] of alleging and proving all facts upon which he relies to overturn the judgment and of giving a satisfactory reason for not resorting to his remedy of appeal."). A review of the record indicates no amended state habeas petition was filed.

a. Exhaustion

Discussing the exhaustion doctrine, the United States Supreme Court concluded:

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts…state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan*, 526 U.S. 838, 845 (1999). In sum, the exhaustion doctrine is dependent upon the procedural remedies available under state law. *Loui v. Bronster*, 246 F.3d 674 (9th Cir. 2000) (citing *O'Sullivan*, 526 U.S. at 847.). The Ninth Circuit has recognized that, "'[i]n California, a Swain/Duvall dismissal affords the petitioner the opportunity to refile an amended pleading that "allege[s] with sufficient particularity the facts warranting habeas relief." [Petitioner's] failure to do this renders his claim unexhausted.' " *Douglas v. Fnu Walker*, No. EDCV 08-1126-VBF(RC), 2009 WL 482344, at *3 (C.D. Cal. Feb. 24, 2009); (quoting *Howard v. Campbell*, 305 Fed. Appx. 442, 2008 WL 5424153, *2 (9th Cir.(Cal.))).

b. Procedural Defect

In citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997), the magistrate judge choose to proceed to the merits of the habeas petition rather than consider procedural bar. However, where issues of state law are straightforward and uncomplicated, *Lambrix* suggests the procedural-bar issue be resolved first. *Id*. "A State's procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system." *Johnson*, 136 S. Ct. at 1807 (quoting *Lambrix*, 520 U.S. at 525). Accordingly, the Court reviews California's procedural rules.

California requires criminal defendants to raise available claims on direct appeal. *Johnson v. Lee,* 136 S. Ct. 1802, 1804 (2016). In California, this rule is referred to as the "*Dixon*-bar." *Id*.; (citing *Dixon*, 41 Cal.2d at 759) (a defendant procedurally defaults a claim raised for the first time on state collateral review if he could have raised it earlier on

direct appeal).  This rule is commonly followed among federal habeas courts as well.  *See Sanchez–Llamas v. Oregon*, 548 U.S. 331, 350–351 (2006).  Giving due regard to state procedural rules that mirror those applied in federal courts, the Supreme Court in *Johnson* reiterated that "'[a] state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default.'"136 S. Ct. at 1806 (quoting *Walker v. Martin*, 562 U.S. 307, 311 (2011)).

> Absent showings of cause and prejudice, federal habeas relief will be unavailable when (1) a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds. (Quotations and citations omitted).

*Martin*, 562 U.S. at 308.  If a petitioner raises a claim in a California state habeas petition after substantial delay, the state court will still consider the petition on the merits if good cause is demonstrated.  *In re Reno*, 55 Cal. 4th 428, 460 (2012), *as modified on denial of reh'g* (Oct. 31, 2012).  Even if good cause is not presented, the state court will consider the merits if the petition reflects an "error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no judge or jury would have convicted the petitioner."[5] *Id.*   If good cause for the delay is found, the petition is not deemed untimely, and no procedural defect exists. However, even if the California Supreme Court found Gann's reasoning sufficient to support good cause, it was unable to reach the merits in light of the petition's deficiency. Gann's failure to file an amended petition with sufficient particularity to support relief, renders his claim unexhausted, even if not procedurally defective.  The state court was not granted a full opportunity to evaluate whether his claim reflected an error of constitutional magnitude.

---

[5] There are four recognized exceptions which prompt consideration of the petition on the merits.  The remaining three exceptions are inapplicable to the facts of this case.

Even assuming good cause was shown and an amended petition was filed detailing specific facts in the record to support his claim, the Court Adopts the R&R's determination that petitioner's re-joinder claim does not rise to the level of constitutional error in light of the court's use of separate juries. *See Zafiro v. United States*, 506 U.S. 534, 540, (1993) (mutually antagonistic defenses are not prejudicial *per se* and therefore do not require severance); see also *United States v. Lane*, 474 U.S. 438,446 n. 8 (1986) (misjoinder rises to the level of a due process violation only if it results in prejudice so great as to deny defendant his right to a fair trial.); *United States v. Sidman*, 470 F.2d 1158, 1167 (9th Cir. 1972)( two juries may be impanelled in a joint trial to obviate the difficulties presented by the *Bruton* case without infringing upon constitutional guarantees). Petitioner's objection is **OVERRULED**.

### E. Jury Instructions

Petitioner claims that the jury was improperly instructed. He challenges the state court's instruction on evidence of an uncharged conspiracy (CALCRIM No. 416) in relation to the trial's court's ruling on the scope of the alleged conspiracy. He also argues the jury should not have been instructed (under CALCRIM No. 418) that they could consider Hansen's statements for the truth, if they found the statements were made in furtherance of a conspiracy because her statements were testimonial hearsay and the use of Hansen's statements violated Gann's Sixth Amendment rights.

Gann's CALCRIM 416 challenge is based on the trial court's interpretation of the California Evidence Code and California state law, neither of which are grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("habeas powers unavailable to reverse a conviction based on a belief that the trial judge incorrectly interpreting California law.)

Gann's assertion of instructional error as it relates to CALCRIM No. 418 stems from the same issues presented in his claim for violation of his Sixth Amendment rights. Pursuant to this Court's determination that Hansen's pre-arrest statements were testimonial

23

hearsay and therefore inadmissible under the Confrontation Clause, the Court **OVERRULES** Petitioner's objection as **MOOT**.

### F. Cumulative Errors

The R&R limits Gann's cumulative error argument to his claims involving Hansen's statements and K.U.'s testimony. Petitioner objects to this limitation and asserts that his cumulative error argument applies to "the many evidentiary errors that occurred throughout the course of the trial… in addition to the other six claims raised in this petition." (*Pet'r's Objs* at 44.) The Court has conducted a complete review of the record and addressed each of petitioner's claims. While petitioner does present numerous alleged trial errors, the Court recognizes two of constitutional dimension – namely admission of Hansen's pre-arrest statements to law enforcement. However, the errors were not so numerous that the combined effect would warrant habeas relief. The Court also notes the overall strength of the prosecution's case was considerably high. In light of the Court's finding of harmless error, as discussed below, it cannot be said that violations of Gann's Sixth Amendment rights had a "substantial and injurious effect or influence" on the jury's verdict. *See Parle v. Runnels*, 505 F.3d 922, 928 (9th Cir. 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 696 (1984). Petitioner's objection is **OVERRULED**.

### G. Judicial Bias

Petitioner claims judicial bias infected his trial rendering it fundamentally unfair. Gann argues that he was denied due process because the trial judge prejudged the case. His claim is based on extrajudicial information received after trial that the trial judge attended the arraignments of Gann and Hansen as a spectator and was overheard stating that "MacNeil was a good man and he did not deserve what those punks did to him." Gann moved for a new trial, attaching a declaration from the defense investigator who witnessed the conversation between counsel and the attorney who allegedly overheard the statement.

The CCOA rejected the contention that Gann was denied due process. The CCOA opinion concluded that the trial court did not error in denying Gann's motion for a new trial because: (1) the record did not affirmatively demonstrate by admissible evidence the

24

statement alleged was made by the trial judge; (2) defense counsel never expressed any concern during trial, and (3) defense counsel failed to identify any specific comments or rulings made that demonstrated bias against Gann. In his objection to the R&R, Gann points to the trial court's rulings and the multiple presumed trial errors laid out in his petition as an indication of bias. The Court first notes that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp*., 384 U.S. 563, 583 (1966). Second, as discussed above, it cannot be said that petitioner's trial was riddled with errors. Third, the determination that petitioner's Sixth Amendment rights were violated does not demonstrate actual bias on the part of the trial judge. At most, it indicates an unreasonable application of the law.

The reasoning, as explained in the R&R, holds true. The trial judge made statements before trial regarding his professional interactions with the victim, both in and out of court. Even if the trial judge formed an opinion of Gann's guilt or innocence prior to being assigned the case, his opinion would not constitute a basis for a constitutional error unless it "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. at 555. Gann argues that the "overtly antagonistic comments are not part of the record, but instead recorded as 'discussion held off the record…'" *Doc. No.* 31 at 47. However, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Whether the trial judge formed an unfavorable predisposition or a preconceived notion prior to, during, or outside of judicial proceedings, the bias must be so extreme as to display clear inability to render fair judgment. *Id.* at 551.

Petitioner's claim that sufficient evidence exists in discussions off the record is unpersuasive. Defense counsel made no mention of impartiality until after trial, despite being made aware of the judge's contact with the victim before trial. Adopting the R&R's reasoning, this Court finds that an evidentiary hearing is unwarranted and that the state

25

court's denial of a new trial was not contrary to federal law. Petitioner's objection is **OVERRULED**.

## II.    UNREASONABLE FACTUAL DETERMINATIONS

Habeas relief is available when a state court's decision is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. §2254. A "state court's factual findings are entitled to a presumption of correctness that can be overcome only by clear and convincing evidence". 28 U.S.C. § 2254(e)(1); *Rodriguez v. McDonald*, 872 F.3d 908, 918 (9th Cir. 2017) (*citing Crittenden v. Chappell*, 804 F.3d 998, 1011 (9th Cir. 2015)). But this presumption does not apply to the state courts' resolution of mixed questions of law and fact. *Acosta–Huerta v. Estelle*, 954 F.2d 581, 585 (9th Cir.1992).

The CCOA set forth facts within the factual background of the opinion. A large majority of those facts within section one, entitled "Events leading up to the crime" and two entitled "The murder of Timothy MacNeil" were taken from Hansen's confession and pre-arrest statements to law enforcement. *See Doc. No. 18-71* at 49-55 (factual background of the CCOA opinion); *see also Doc. No. 18-10* at 46-97 (Det. Rivera interview of Brea Hansen)*; Doc.No. 18-23* at 113-119 (testimony of officer Forsey re: Hansen's statements).

### A. Facts Based on Inadmissible Evidence

First, Petitioner objects to the R&R's reliance on particular statements in the factual background on the basis that such statements were derived from evidence that was either not admitted or improperly admitted into evidence at trial. On habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States". *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). As discussed above, under *de novo* review, the Court found it was constitutional error to admit Hansen's pre-arrest statements to Officer Forsey and Deterctive Rivera. However, the CCOA's reference to Hansen's confession and pre-arrest statements to determine whether the trial court erred in finding a conspiracy existed, and the scope of that conspiracy, did not constitute a

violation of Gann's due process rights. Further, as determined above, no constitutional error arises from the admission of Hansen's 911 call and Goodman's testimony.

## B. Historical Facts Reasonably Supported by the Evidence

Second, Petitioner challenges inferences drawn by the state court and particular statements in the factual background on the basis that such findings of fact are not reasonably supported by the evidence[6]. Gann objects to: (1) the "use of the inflammatory word 'hitman' ", (2) references to the purchase of "black" clothing by Gann , (3) statements that the intruder was masked and dressed in black, (4) references to the get-a-way truck as "Gann's truck", (5) references to Gann and Hansen "discuss[ing] plans" to kill McNeil, and (6) the statement that Hansen's hands were bound  with "one" zip-tie , as opposed to a pair of zip-ties.

The reviewing Court must be "'convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record' before the state court". *Rodriguez*, 872 F.3d at 919 (9th Cir. 2017) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004). "A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson v. Virginia*, 443 U.S. 307, 326 (1979); see also *McDaniel v. Brown*, 558 U.S. 120, (2010). For a habeas writ to issue, the state court's decision must be *based on* an unreasonable determination of the facts – i.e. the factual finding must be determinative or material to the state court's decision. Therefore, the Court will address only those facts raised by Gann that formed a basis for the CCOA's determination that: (1) "[t]he evidence against Gann was more than ample to convict of first degree murder", and (2) "given all the evidence, it

---

[6] Petitioner has not raised, either on direct appeal or on collateral attack, a *Winship* claim for violation of his due process rights based on an insufficiency of the evidence, and the Court does not construe his objections as such. 397 U.S. 358, 364, (1970).

[was] not reasonably probable that the jury would have returned a different verdict," had no error occurred[7].  With these standards in mind, the Court turns to petitioner's factual challenges.

(1) The word "Hitman": Goodman testified that: "[Gann] talked to a friend of his … and was gonna give him …$2000, and he was going to …[kill his stepfather] for him…." *Doc. No.* 18-29 at 11, ln 14-24.  "[Gann] was gonna give the guy that was supposed to come the $2000, and then I think the money that was in the safe, or the jewelry." *Id*. at 24.

(2) Purchase of "black" clothing: Dolan Laveen testified that a credit card purchase was made at the Sun City, Arizona Goodwill on July 18, 2007 at 9:06: 52 a.m. *Doc. No.* 18-30, at 18-19, 21. The signature of the purchaser, "looks like Nathan." *Id*. at 21. "On this particular transaction …three men's items [men's shirts or pants] were purchased. *Id*. at 19, 23.  Goodman testified that "[Gann] went to a Goodwill and picked up a shirt, gloves, I think pants and drove out to San Diego from Sun City…" *Doc. No.* 18-29 at 11.  When asked if Gann described the clothes, Goodman answered "Black, Black clothes." *Id*. at 26.  The last four digits of the visa credit card used to make the purchase matched that of petitioner's credit card account.  *Doc. No.* 18-29 at 136.

(3) Masked intruder dressed in black: Hansen told the 911 operator that a man dressed in dark clothing popped out downstairs and shot her dad after her dad refused to provide the combination to the safe. *Doc. No. 18-10* at 11-21. She stated that he was covered "head to toe," in black jeans, a long sleeve black shirt, a black ski mask, black shoes, gloves and sunglasses. *Id*. at 12-13, 18, 20. Eyewitness Christopher Miles testified that, "I saw him come out, jump down….jumped off that retaining wall to the street…." *Doc. No. 18-24* at 13. When asked whether he could tell what the person was wearing, Miles responded, "a velvet …like sweater, and ….pair of black pants…like dickies. Pair of black wrap-around sunglasses." *Id*. at 14.  A crime specialist with the San Diego police department collected, a "dark blue knit ski mask, with eyes cut out" and "apparent brush debris" and "one size, xl/xg black Stafford long-sleeved t-shirt" near the scene "from the trees, bushes, North of the wooden San Diego and Electric pole, No. 178964." *Doc. No.* 18-25 at 114, 102.  The DNA extract taken from the mask matched Gann with a scientific certainty of 1 in 11 quintillion. *Doc. No.* 18-26 at 40. Later, a "pair of black denim pants" were found inside-out.  *Id*. at 108. Goodman testified, "[Gann] told me on the way up the steps, he threw …the gloves and the scrunchy that he was using as a mask and it got caught in a tree, as he was running up the steps. But he just left it. [T]he

---

[7] Whether Hansen was tied with one or two zip ties was immaterial to the state court's determinations and therefore not subject to review

rest of the clothes that he had he threw off when he was driving back." *Doc. No.* 18-29 at 14.

(4) Older Chevy Truck: Prosecution witness Devon Whitney was shown Exhibits 15 and 16 (pictures of Gann's truck seized as evidence) and asked, "does that look like the truck that you saw parked [at the top of the stairwell, next to the telephone pole] that day?" He responded, "Yes, exactly." *Doc. No.* 18-24 at 45-46. Goodman testified that Gann drove "an older truck" and "parked at the top of a hill where there is a bunch of steps." *Doc. No.* 18-29 at 14.

(5) Discussions between Hansen and Gann: Goodman testified, "[Gann and his sister] talked, I don't know which had initiated it, but it was said that they were gonna take care of [Mr. McNeil.]" *Doc. No.* 18-29 at 11. When Gann arrived at the McNeil house, Hansen "kissed Gann and thanked him for coming." *Id.* at 37.

Sufficient evidence appears in the record to support the factual findings which formed the basis of the state court's ultimate determination. Inferences properly drawn from these facts, are entitled to statutory presumption of correctness. *Parke v. Raley*, 506 U.S. 20, 35-36 (1992). Petitioner has failed to meet his burden by clear and convincing evidence and his objections to findings of fact and inferences drawn from those facts are **OVERRULED**.

### III. HARMLESS ERROR ANALYSIS

A writ of habeas corpus shall issue only when constitutional error or an unreasonable determination of the facts has a prejudicial effect on the outcome of the case. 28 U.S.C 2254(d); *Brecht*, 507 U.S. at 637 (1993) ("habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' ") Having determined that (1) the admission of testimonial hearsay violated Gann's Sixth Amendment right to confront witnesses testifying against him and (2) reliance on such evidence to determine Gann's guilt constitutes trial error, the Court next determines whether the errors were harmless.

Even where constitutional error is found, in § 2254 proceedings a court must also assess the prejudicial impact of constitutional error under the *Brecht* standard. Under

that standard, habeas relief is warranted only if the error had a substantial and injurious effect or influence in determining the jury's verdict. If a habeas court is left with grave doubt about whether a constitutional error substantially influenced the verdict, then the error was not harmless. (quotations and citations omitted).

*Ortiz v. Yates*, 704 F.3d 1026, 1038 (9th Cir. 2012).

Guided by the Supreme Court in *Delaware v. Van Arsdall*, the Court applies a five-factor test to assess whether the errors resulted in a "substantial and injurious effect." 475 U.S. 673, 684 (1986). The factors include: (1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the witness' testimony on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case.

In light of the historical facts discussed in section II(B) and having considered the *Van Arsdall* factors, the Court deems it appropriate, to the extent the analysis is consistent with this Court's order, to **ADOPT in part** the R&R with regards to the harmless error analysis set forth in sections IV(C)(2)(b) and (c)(iv) of the report. Finding that the errors were harmless, the Court **OVERRULES** Petitioner's objections to the R&R and finds, as did the magistrate judge, that "there was ample evidence to support Gann's murder conviction outside of Hansen's statements." Gann has not shown that the admission of testimonial hearsay evidence had a substantial injurious effect on the jury's verdict.

## CONCLUSION AND ORDER

After having considered Petitioner's objections on the merits, the CCOA opinion, and the trial record, including sealed medical records, the Court finds that the R&R provides a cogent analysis of the issues raised. The Court **ADOPTS in part** the R&R to the extent it is consistent with this Court's Order. Accordingly, **IT IS HEREBY ORDERED** that:

1. The order denying Petitioner's Rule 60(b) Motion [Doc. No. 45] is **VACATED**.

2. Petitioner's renewed Motion For Reconsideration [Doc. No. 47] is **GRANTED**

3. Petitioner's objections to the R&R are **OVERRULED**.

30

4. The Court **MODIFIES and ADOPTS in part** the Report and Recommendations [Doc. No. 28] of Magistrate Judge Barbara Lynn Major.

5. The petition for writ of habeas corpus [Doc. No. 1] is **DENIED.**

6. The Motion for Certificate of Appealability is **DENIED as MOOT.**

**IT IS SO ORDERED**.

Dated:  September 14, 2018

_____
Hon. John A. Houston
United States District Judge